O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IN RE DEBTOR: LOS ROBLES CARE CENTER, INC. CASITAS EUBANKS GROUP, INC., formerly Los Robles Care Center, Inc., | ) ) ) ) ) ) | Case No. CV 14-00786 DDP **ORDER AFFIRMING BANKRUPTCY COURT'S DISMISSAL OF PLAINTIFF'S COMPLAINT** |
| Plaintiffs, | ) ) | [Dkt. No. 8] |
| v. | ) ) | USBC Central District of California - Northern Div, |
| SECRETARY OF U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES on behalf of Centers for Medicare and Medicaid Services; U.S. SMALL BUSINESS ADMINISTRATION; SECRETARY OF U.S. DEPARTMENT OF TREASURE, | ) ) ) ) ) ) ) ) ) | 9:09-bk-13125-RR Adversary Case: 9:13-ap-1143-RR |
| Defendants. | ) ) | |

Presently before the Court is Plaintiff's appeal from a dismissal by the Bankruptcy Court of its complaint for lien determination. (Dkt. Nos. 1, 8.) Having considered the parties' submissions, the Court adopts the following order.

cc: US Bankruptcy Court & US Trustee's Office

## I. BACKGROUND

Defendant United State Small Business Administration ("SBA") is a federal government entity that held, as security for certain small business loans, liens against some of Plaintiff's commercial property. Plaintiff filed for Chapter 11 bankruptcy in 2009. (See generally Bankruptcy Case No. 9:09-bk-13125-RR.) While that bankruptcy was pending, in August 2013 the United States Treasury Department applied certain Medicare receivables owed to Plaintiff to offset Plaintiff's debt to SBA. (Appellant's Opening Br. at 4.)

Plaintiff argues that this direct action on the debt constitutes an "election of remedies" under Cal. Code Civ. P. § 726. See, e.g., Walker v. Cmty. Bank, 10 Cal. 3d 729, 733 (1974) ("[W]here the creditor sues on the obligation and seeks a personal money judgment against the debtor . . . he makes an election of remedies, electing the single remedy of a personal action, and thereby waives his right to foreclose . . . ."). Plaintiff argued in a complaint to the Bankruptcy Court that because SBA elected to recover via the application of Medicare receivables, it could not also assert its security interest in the sale of the property. (Appellant's Opening Br. at 4; Appellant's App'x, Tab 1.)

Defendants filed a motion to dismiss the complaint, arguing that the exercise of the setoff was inadvertent and that in any event federal law preempts § 726.[1] (Appellant's App'x, Tab 2.) Accompanying the motion were declarations by SBA employees indicating that the referral of the case to the Treasury for setoff

---

[1] Although other claims were initially presented, by the time the Bankruptcy Court ruled on the motion to dismiss, only the § 726 issue remained. (Appellant's App'x, Tab 3 at 2:6-8.)

2

was inadvertent, that the SBA never intended to use or elect setoffs prior to enforcing its liens, and that the setoffs were refunded when the error was discovered.

On January 16, 2014 the Bankruptcy Court granted the motion to dismiss. (Appellant's App'x, Tab 5.) Although the order did not state the bankruptcy judge's reasoning, during a hearing on the motion the judge entered into the record several "findings of fact and conclusions of law." (Appellant's App'x, Tab 6 at 15:6-7.) First, the bankruptcy judge cited to 13 C.F.R. 101.106 as "a congressional statement that no state law will contravene any attempt by the SBA to collect or no state law can defeat an obligation to the SBA." (Id. at 8:13-16.) She found that "Congress has determined that the ability of the United States to have a functional SBA program for small business loans is of such national importance that 726 of the California Code of Civil Procedure would not be applicable." (Id. at 14:18-22.) She also noted that one of the purposes of § 726 was to prevent "a multiplicity of lawsuits," and that applying § 726 in this case would not "reduce litigation." (Id. at 13.) Finally, she concluded that even in § 726 were technically available, the violation was "inadvertent" and "of negligible duration," and therefore not actionable even under state law. (Id. at 14.)

Plaintiff now appeals the Bankruptcy Court's decision to dismiss its complaint.

**II. LEGAL STANDARD**

The district court acts as an appellate court in an appeal from a bankruptcy decision and may affirm the bankruptcy judge's order "on any ground supported by the record," even if that ground

3

is not the one relied upon by the bankruptcy judge.  <u>In re Crystal Properties, Ltd., L.P.</u>, 268 F.3d 743, 755 (9th Cir. 2001).  The district court reviews conclusions of law *de novo* but reviews findings of fact for clear error.  <u>Screen Capital Int'l Corp. v. Library Asset Acquisition Co.</u>, 510 B.R. 266, 271 (C.D. Cal. 2014).

**III. DISCUSSION**

**A.  Federal Preemption Under DCIA**

SBA argues, and the Bankruptcy Court concluded, that the operation of § 726 is preempted by federal law.  SBA bases its argument on two bodies of law – first, the federal regulations propagated by the administrator of the SBA and a series of cases dealing with choice of law where contracts with federal agencies are concerned, and second, the Debt Collection Improvement Act ("DCIA"), which authorizes the Treasury setoff program.  Because the first argument implicates a long, conflicted line of federal common law,[2] as well as difficult questions of deference to agency regulations, the Court starts with the second argument, which presents a cleaner case of statutory federal preemption.

Preemption occurs in one of three ways: "(1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually

---

[2] <u>Compare, e.g.</u>, <u>United States v. Yazell</u>, 382 U.S. 341 (1966) (applying state law to a contract with SBA), <u>United States v. MacKenzie</u>, 510 F.2d 39 (9th Cir. 1975), <u>United States v. Pastos</u>, 781 F.2d 747 (9th Cir. 1986) (same), <u>and</u> <u>In re Alcock</u>, 50 F.3d 1456 (9th Cir. 1995) (same), <u>with</u> <u>United States v. Kimbell Foods, Inc.</u>, 440 U.S. 715 (1979) (applying federal rather than state law to determine priority of liens where federal agency was lienholder), <u>United States v. Stadium Apartments, Inc.</u>, 425 F.2d 358 (9th Cir. 1970) (denying use of state redemption statute in foreclosure by Federal Housing Authority), and Mineta v. Bd. of Cnty. Comm'rs of the Cnty. of Delaware, No. 05-CV-0297CVE-PJC, 2006 WL 2711559, at *12 (N.D. Okla. Sept. 19, 2006) ("<u>Yazell</u> has been confined to the state's overriding interest in domestic relations law, and does not apply in any other context.").

conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." Chae v. SLM Corp., 593 F.3d 936, 941 (9th Cir. 2010).

The DCIA creates a uniform method by which federal agencies are required to collect on nontax debts owed them. See generally 31 U.S.C. § 3701 et seq. It does not contain an express preemption provision. It also does not appear to occupy the entire field of debt collection. Therefore, it only preempts state law to the extent that the state law actually conflicts with it.

The Ninth Circuit has articulated certain considerations governing the conflict preemption analysis:

> A state law, whether arising from statute or common law, is preempted if it creates an obstacle to the accomplishment and execution of the full purposes and objectives of Congress . . . .
>
> We must be cautious about conflict preemption where a federal statute is urged to conflict with state law regulations within the traditional scope of the state's police powers. When we deal with an area in which states have traditionally acted, the Supreme Court has told us to start with the assumption that a state's historic police powers will not be superseded absent a clear and manifest purpose of Congress. Contract and consumer protection laws have traditionally been in state law enforcement hands . . . . Accordingly, we would not lightly decide that . . . contract and consumer protection claims under California law are preempted by conflict preemption . . . .

5

Chae v. SLM Corp., 593 F.3d 936, 943-44 (9th Cir. 2010) (internal quotation marks and citations omitted).

Cal. Code Civ. P. § 726 embodies two rules. Gates v. LPP Mortgage, Inc., No. CV 13-8737 DSF PLAX, 2013 WL 6978834, at *3 (C.D. Cal. Dec. 30, 2013). The "security-first" rule requires "a secured creditor to proceed against the security before enforcing the underlying debt"; the penalty for failing to do so is waiver of the security. Id. at *4. The "one-action rule" limits a creditor to *either* a foreclosure suit *or* a suit directly on the debt. Id. at *3. SBA is alleged to have violated the security-first rule by taking a setoff – that is, acting directly to enforce the debt – rather than foreclosing on the security.

Because § 726 is essentially a consumer protection law (in that it protects the interests of debtors), and because it implicates contract (because promissory notes are contracts), it is operating in an area of traditional state regulation. As such, it will not be preempted absent findings both that it presents an obstacle to the accomplishment of the purpose of the statute and that the statute presents a "clear and manifest purpose of Congress" to preempt state law.

Here, however, the Court finds that those requirements are met. The DCIA was passed, inter alia,

> (1) To maximize collections of delinquent debts owed to the Government by ensuring quick action to enforce recovery of debts and the use of all appropriate collection tools.
> (2) To minimize the costs of debt collection by consolidating related functions and activities and utilizing interagency teams.

6


    (3) To reduce losses arising from debt management activities by requiring proper screening of potential borrowers, aggressive monitoring of all accounts, and sharing of information within and among Federal agencies.

    (4) To ensure that the public is fully informed of the Federal Government's debt collection policies and that debtors are cognizant of their financial obligations to repay amounts owed to the Federal Government.

Debt Collection Improvement Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, § 31001(b) (Apr. 26, 1996) (statement of purpose).

    The statute requires federal agencies to collect debts, 31 U.S.C. § 3711(a)(1), 3711(g)(9). It authorizes agencies, after going through normal collection procedures, to collect via administrative offset. 31 U.S.C. § 3716(a). If a debt is 120 days or more delinquent, the agency *must* refer the debt to Treasury for offset. 31 U.S.C. § 3716(c)(6)(A). In any event, at least once a year the Treasury Department must be notified of *all* past due debts; Treasury, in turn, *must* offset those debts against any tax refund owed the debtor. 31 U.S.C. § 3720A(a)-(c). Debts are not offset, however, if there is an automatic stay in a bankruptcy proceeding. 11 U.S.C. § 362(a)(7).

    The statement of purpose accompanying the statute evinces Congress's intent to set forth uniform debt collection procedures for federal agencies; to make the public aware of those uniform procedures; to centrally monitor collections; and to reduce costs by, among other things, centralizing collections through the offset process. That intent reflects the will of Congress to regulate the debt collection of federal agencies under a single federal scheme,

7

which necessarily carries with it the purpose of preempting state law to the degree that it presents an obstacle to the operation of such a federal scheme.

These purposes of the statute would be thwarted if its mandatory debt collection procedures resulted in the loss of an agency's security interest under state election-of-remedies rules. As applied to federal agencies required to pursue offsets by the DCIA, therefore, Cal. Code Civ. P. § 726 is preempted.

In this case, the use of the offset may have been improper under the Bankruptcy Code, as SBA acknowledges. That fact may provide Plaintiff with other remedies to recover consequential damages arising from the offset, such as a motion for contempt in the Bankruptcy Court or a federal civil rights claim. The Court expresses no opinion about the availability or merits of any such claim. What Plaintiff may not do, however, is claim that an offset under DCIA waives an agency's security interest under state law; that function of § 726 is preempted.

**B.  Federal Common Law Choice of Law Rules and SBA Regulations**

Because the Court finds that the operation of § 726 to waive SBA's security interest is preempted under the DCIA, the Court does not address SBA's other arguments.

**C.  State Law Arguments**

Because the Court finds the operation of § 726 to waive SBA's security interest is preempted under the DCIA, the Court does not address whether Plaintiff could state a claim under state law.

///
///
///

**IV. CONCLUSION**

The Bankruptcy Court's dismissal of Plaintiff's complaint is AFFIRMED.

IT IS SO ORDERED.

Dated: May 14, 2015

DEAN D. PREGERSON
United States District Judge